FILED
2024 Mar-12  PM 01:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **TERRELL MICHELL KELLEY** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No.: 5:23-cv-00257-LCB** |
| | ) |
| **KILOLO KIJAKAZI, as Acting** | ) |
| **Commissioner, Social Security** | ) |
| **Administration, An Independent** | ) |
| **Agency of the United States of** | ) |
| **America,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>OPINION & ORDER</u>

Plaintiff Terrell Michell Kelley seeks judicial review of the final decision by the Social Security Administration's Commissioner to deny her claim for disability benefits. 42 U.S.C. § 405(g). The Court has closely examined the record, and now **AFFIRMS** the Commissioner's decision for the reasons explained below.

## I.   BACKGROUND

### A.   Standard of Review

A court's only task in reviewing a denial of disability benefits is to determine whether the Commissioner's decision is "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*

Thus, courts reviewing an appeal from a denial of disability benefits may not "decid[e] the facts anew, mak[e] credibility determinations, or re-weigh[ ] the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Rather, the court must affirm the Commissioner's decision if the denial is supported by substantial evidence, even if the preponderance of the evidence weighs against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## B.   Procedural History

Kelley applied for disability insurance benefits on June 29, 2021, alleging disabilities consisting of "high blood pressure, arthritis in the knees, and periodic cellulitis of the legs." At the time of her application, Kelley "reported being 5'4" and 460 pounds," but only reported taking a potassium supplement and "an anti-hypertensive agent" to manage her blood pressure. (Doc. 6-3 at 25).

Although Kelley initially alleged that her disability began in 2013, she later amended her application "to allege disability beginning on February 15, 2020." (*Id.*) After Kelley's claim was denied by the Social Security Administration on December 6, 2021, she requested reconsideration, and her application was denied again on February 22, 2022. (*Id.*) Following those administrative denials, Kelley requested a hearing before an Administrative Law Judge, who held a hearing on June 16, 2022. (*Id.*) She was represented by counsel at that hearing, which also included testimony

from an impartial Vocational Expert, Brenda Joyce White. (*Id.*) Following the hearing, the ALJ issued a decision again denying Kelley's claim for disability benefits, (*id.* at 30), and the decision became final after the Social Security Appeals Council declined to review the ALJ's decision. (*Id.* at 5). Having exhausted her administrative remedies, Kelley appealed the Commissioner's final decision in this Court soon after.

### C.      The Social Security Disability Framework

The Social Security disability framework requires an ALJ to ask a series of questions to determine whether an applicant qualifies for disability benefits:

(1) Is the claimant engaged in substantial gainful activity?
(2) Does the claimant have a severe impairment?
(3) Does the claimant have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?
(4) Is the claimant able to perform former relevant work?
(5) Is the claimant able to perform any other work within the national economy?[1]

20 C.F.R. §§ 404.1520(a), 416.920(a); *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

These steps are progressive, and the inquiry ends if the ALJ finds that the claimant has not met the requirements of any individual step. As a result, an ALJ will reach Step 4 only if a claimant is not engaged in substantial gainful activity

---

[1] A claimant bears the burden of proof through Step 4, but the burden shifts to the Commissioner at Step Five. *See Wolf v. Chater* 86 F.3d 1072, 1077 (11th Cir. 1996). The ALJ here did not reach Step 5.

(Step 1), has a severe impairment (Step 2), and does not have an impairment or combination of impairments that meets or medically equals a listed impairment (Step 3). *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). And before conducting the analysis required in Step 4, the ALJ must first determine the claimant's residual function capacity ("RFC"), which is the claimant's ability to perform work of any kind despite "all . . . medically determinable impairments" of which the ALJ is aware, "including . . . medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2).

Once the claimant's RFC is established, the ALJ compares the claimant's RFC to the demands of their former relevant work (Step 4) and any other work in the national economy (Step 5). If a claimant can perform former relevant work, or the Agency can show that the claimant is able to perform any other work in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1512(f), (g).

### D.    The ALJ's Analysis

Although Kelley asserts that the Commissioner's "determination regarding the Plaintiff's residual functional capacity [was] inadequate and not supported by substantial evidence," (Doc. 8 at 5), the ALJ's opinion followed the required analysis to the letter. *See* (Doc. 6-3 at 22-24). At Step 1, the ALJ found that Kelley had not engaged in substantial gainful activity since February 15, 2020. (*Id.* at 22).

At Step 2, the ALJ found that Kelley suffers from two severe impairments, namely degenerative joint disease or osteoarthritis of the knees and morbid obesity, along with the non-severe impairments of hypertension and recurrent cellulitis. (*Id.*) As the ALJ noted, non-severe impairments "have no more than a minimal effect on the claimant's ability to meet the basic demands of work activity." (*Id.*) (citing 20 CFR § 404.1522 and Social Security Ruling 85-28). (*Id.* at 12) (citing 20 CFR § 404.1522).

At Step 3, the ALJ found that none of the claimant's impairments met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 23). The ALJ reached this conclusion in part because Kelley's counsel never argued that there was "objective medical evidence in the record of an impairment of listing level severity." (*Id.*)

That brings us to Step 4. Following "careful consideration of the entire record," the ALJ concluded that Kelley possessed the RFC to perform "a full range of light work" with a few limitations, including her past work as silver wrapper. (*Id.* at 24.) The ALJ found that Kelley "is limited to occasional postural maneuvers," should not kneel, crawl, or climb "ropes, ladders, or scaffolds," and should avoid "extreme" heat, cold, or vibration, as well as "unprotected heights and dangerous moving unguarded machinery; and she should be allowed to use a cane for ambulation." (*Id.*)

In determining the RFC, the ALJ found that although Kelley's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; [Kelley's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 25-26). For instance, Kelley alleged that her disability (consisting of high blood pressure, arthritis, and periodic cellulitis) began in February 2020, but "[t]here are no medical records of the claimant seeking care during the period January 2020 through June 2021." (*Id.* at 25, 26).

As for the effect of Kelley's arthritis in her knees, the ALJ noted that the condition had been present since at least 2013, and that "there were no related complaints, diagnosis, or treatment in the primary care records of July 2021." (*Id.*) Even after x-rays confirmed degenerative changes in Kelley's knees in October 2021, the physician who conducted a follow up appointment a month later concluded that her osteoarthritis was "currently manageable symptomatically through icing," and Kelley was not prescribed, and did not report using, "any related pain, arthritis, or anti-inflammatory medication." (*Id.*)

An assessment conducted at that same November 2021 appointment found that although Kelley "could not assume squat or kneeling positions," there was "no evidence of joint instability, joint deformity, or atrophy" or other neurological, cardiovascular, neurological, pulmonary, gastrointestinal, or renal problems. (*Id.*)

Furthermore, the examining physician found that Kelley was able to "stand, walk, squat and climb stairs," albeit with some "knee stiffness," and that Kelley "denie[d] having any difficulty sitting, bending, lifting, carrying, handling, using her hands, or traveling." (*Id.*). Regarding Kelley's morbid obesity, the ALJ found that "no specific functional limitations are reported, shown objectively on exam, or assessed by any treating source" in the evidence. (*Id.* at 27).

Finally, the ALJ reviewed medical opinion evidence from a State agency consultant and a consultative examiner. The ALJ (as well as the State agency) concluded that the opinions of consultative examiner Dr. John Lary, who examined Kelley in October 2021, were not persuasive because "they [were] more restrictive than the objective findings and . . . contrast[ed] with other evidence in the record." (*Id.* at 28). The ALJ also found that "Dr. Lary used broad/vague terms in giving his opinions (i.e., 'significantly impaired') as opposed to vocationally relevant capacities/limitations." (*Id.*)

By contrast, the ALJ found that the February 2022 opinion of State agency consultant Dr. Krishna Reddy was far more persuasive, not only because it was the most recent, but because the opinion was "consistent with the longitudinal evidence of record at the hearing level." (*Id.*) More importantly, Dr. Reddy's opinion was formed with "access to and review of all medical evidence in the record at the time of opinion." (*Id.*)

Thus, "[c]onsidering the evidence as a whole, including opinions and testimony provided," the ALJ concluded that Kelley has a "light work" RFC with some additional limitations, and can work as silver wrapper, as she has in the past. (*Id.* at 28) (omitting citations to the record).

## II.   DISCUSSION

Kelley contends only that the Commissioner's decision is unsupported by substantial evidence.  Having closely reviewed the entire record, however, the Court does not find her arguments persuasive. First, Kelley alleges that the ALJ improperly discounted her subjective testimony. Even so, that claim fails because the ALJ's opinion is nonetheless supported by substantial evidence.

Second, Kelley argues that the ALJ improperly discounted the opinion of consultative examiner Dr. John Lary. However, that claim fails because Kelley does not explain how the ALJ erred.

Third, Kelley alleges that the ALJ failed to properly consider her treatment history. That argument fails because the ALJ was not required to cite every piece of evidence on the record, so long as she considered the evidence as a whole.

### A.   The ALJ did not improperly discount Kelley's subjective testimony.

Kelley's subjective testimony "alleges disability due [to] debilitating pain and limitations." (Doc. 8 at 7). From there, Kelley argues that "the ALJ failed to properly consider the record in its entirety" because "[s]he erroneously overlooked parts of

the Plaintiff's medical record which are consistent with the Plaintiff's allegations and inconsistent with her findings." (*Id.* at 8) Thus, the ALJ erroneously "ignored the totality of the evidence that undermines her conclusion that the Plaintiff can perform a range of light work" because "treatment records and objective evidence support the Plaintiff's allegations." (*Id.*)

Even so, the issue before the Court is not whether the evidence might support Kelley's allegations but whether substantial evidence supports the ALJ's RFC finding. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). As shown above, the ALJ sufficiently and "systematically articulated [her] reasons for rejecting [Kelley's] subjective complaints" based on the evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). As a result, the ALJ's decision was supported by substantial evidence and must be affirmed.

### B.     The ALJ's assignment of minimal weight to Dr. Lary's opinion was supported by substantial evidence.

Kelley next argues that the ALJ "further erred in her evaluation of opinion evidence in this case" by discounting the medical opinion provided by Dr. Lary. (Doc. 8 at 10). Yet Kelley never explains *how* the ALJ erred—instead, her brief merely recites Kelley's own complaints, Dr. Lary's findings, and the ALJ's opinion.

(*Id.* at 10-11). As said at the outset, however, this Court may not "decid[e] the facts anew, mak[e] credibility determinations, or re-weigh[ ] the evidence,", *Moore*, 405 F.3d at 1211, and we decline Kelley's invitation to do so here.

In any event, Kelley would still not prevail even if the ALJ had erred in her evaluation of opinion evidence, because the Commissioner remains ultimately "responsible for making the determination or decision about whether" a claimant is disabled. *Id.* at § 404.1520b(c)(3). That's why "the task of determining a claimant's residual functional capacity and ability to work rests with the administrative law judge, not a doctor." *Moore v. Soc. Sec. Admin., Com'r*, 649 F. App'x 941, 945 (11th Cir. 2016) (cleaned up). So long as the ALJ's decision is supported by substantial evidence, as it was here, the decision must be affirmed.

### C.    The ALJ did not err in finding that Kelley's subjective testimony was inconsistent with the record.

Finally, Kelley argues that ALJ erred because "[t]he ALJ's statement of the Plaintiff's daily activities omits her limiting description of her activities . . . [and] improperly dismissed the qualifying limitations the Plaintiff placed on many of those activities." (Doc. 8 at 12).

Still, "[s]o long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) (citing *Dyer v. Barnhart*, 395 F.3d 1206,

1211 (11th Cir. 2005) (per curiam)). Nothing in the ALJ's decision shows she did not consider the whole record. To the contrary, the ALJ explicitly stated that she "[c]onsider[ed] the evidence as a whole, including opinions and testimony provided." (Doc. 6-3 at 27); *see also* (*id.* at 24) ("After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of light work"). Thus, because the record as a whole provides substantial evidentiary support for the ALJ's RFC finding, the evidence that Kelley points out does not render a different finding.  (Tr. 24-28).

Nor did the ALJ err by "fail[ing] to properly consider the Plaintiff's treatment history in accordance with Social Security Ruling 96-7p," because that ruling was rescinded in 2017. *See* SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017) ("This SSR supersedes SSR 96-7p"). And even if the ALJ were required to consider Kelley's inability to afford treatment in considering her treatment history, the ALJ's decision would still be supported by substantial evidence.

As the ALJ noted, Kelley "stopped working in February 2020" not because of her disability, but because "her employer closed down due to the Covid-19 Pandemic." (Doc. 6-3 at 28). Not only that, but Kelley applied for and "received approximately $24,000 in unemployment benefits over a one-year period [from] April 2020-March 2021, which is substantially more than she ever made in yearly earnings when working." (*Id.*) Nor did she seek medical care during that period,

11

despite that substantially higher income. (*Id.*) Even if Kelley's "son filed the [unemployment] claims" on her behalf, the fact remains that "she certified to the Alabama Department of Labor that she was ready, willing, and able to work" during that time, a fact wholly inconsistent with her claim of disability. (*Id.* at 25, 41); *see Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016) (affirming ALJ's finding that a claimant's "attest[ation] that he was ready, willing and able to work, call[ed] in question his position that he was disabled and unable to work.")

## III.   CONCLUSION

Because the decision of the Commissioner was supported by substantial evidence, the Court **AFFIRMS** the decision and **DISMISSES** this case with prejudice. The Court will enter a final judgment separately.

**DONE** and **ORDERED** March 12, 2024.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE